**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

DEJON PARIS,

Plaintiff,

v.

JAMES HOFMANN, in his official capacity as CEO/Executive Director of the North Texas Tollway Authority; PENN CREDIT CORPORATION; PERDUE BRANDON FIELDER COLLINS & MOTT, LLP ("PBFCM"); and TRANSWORLD SYSTEMS INC. ("TSI"),

Defendants.

**Case No. 3:26-cv-02337-L-BT**

# PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff DeJon Paris, appearing Pro Se, files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and in support thereof would respectfully show the Court as follows:

CERTIFICATE OF AI-ASSISTED DRAFTING

Pursuant to N.D. Tex. L.R. 7.2(f), Plaintiff discloses that generative artificial intelligence was used in the preparation of this filing to assist with legal research, document drafting, and organization of exhibits. All factual assertions, statutory and case citations, and legal arguments in this filing were independently reviewed, verified against primary source documents, and approved by Plaintiff prior to filing. Plaintiff, appearing pro se, takes full responsibility for the accuracy and content of this document.

## I. PARTIES

1. Plaintiff DeJon Paris is an individual residing in Dallas County with a mailing address of 1710 Keller Parkway #9602, Keller, TX 76248.
2. Defendant James Hofmann is sued solely in his official capacity as CEO/Executive Director of the North Texas Tollway Authority ("NTTA"), a governmental entity and political subdivision of the State of Texas created under Chapter 366 of the Texas Transportation Code. Defendant Hofmann may be served with process at NTTA's principal place of business, 5900 W. Plano Pkwy, Plano, TX 75093.
3. Defendant Penn Credit Corporation is a foreign corporation and may be served with process through its registered agent or at its principal place of business at 2800 Commerce Drive, Harrisburg, PA 17110.
4. Defendant Perdue Brandon Fielder Collins & Mott, LLP ("PBFCM") is a domestic limited liability partnership and may be served with process through its registered agent or at its principal office at 1235 N. Loop W., Suite 600, Houston, TX 77008.
5. Defendant Transworld Systems Inc. ("TSI") is a corporation and may be served with process at its principal place of business at 500 Virginia Drive, Suite 514, Ft. Washington, PA 19034.

## II. JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiff's claims under the Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a).
7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and at least one Defendant conducts substantial business within this District.

## III. APPLICABILITY OF STATUTES

8. Defendants PBFCM, Penn Credit, and TSI are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and "third-party debt collectors" as defined by Tex. Fin. Code § 392.001(7).

9. TSI explicitly acknowledged its status in written correspondence by stating, “This is a communication from a debt collector.” (Ex. 18).
10. NTTA's own toll notices characterize the obligation as a “toll debt” and as “a debt” owed to NTTA. This language appears as standard boilerplate under the “Important Bankruptcy Notice” section printed on NTTA's routine ZipCash billing notices generally, not a single isolated notice: “[if you] have received a discharge of the toll debt, this document is for informational purposes only and is neither intended as an action to recover or enforce a claim nor a demand for the payment of a debt that is covered in your bankruptcy case.” (Ex. 7).

## <u>IV. STATEMENT OF FACTS</u>

### A. NTTA and the Veteran Discount Program (Plate DV22B78)

11. Texas Transportation Code § 372.053(a) authorizes a toll project entity to establish a veteran discount program. NTTA has established such a program: it currently offers free passage on its toll roads to Legion of Valor recipients (recipients of the Medal of Honor, Distinguished Service Cross, Navy Cross, and Air Force Cross).
12. Once a toll project entity establishes a discount program under § 372.053(a), § 372.053(a-1) does not leave inclusion of other qualifying veterans to the entity's discretion: “[a] program established under Subsection (a) must include free or discounted use of the entity's toll project by an electronic toll collection customer whose account relates to a vehicle registered under Section 504.202, 504.2025, or 504.315(f) or (g).” Tex. Transp. Code § 372.053(a-1). Section 372.053, now titled “Peace Officer and Veteran Discount Program,” was amended to add the mandatory-inclusion language in (a-1) by Act of June 14, 2019, 86th Leg., R.S., ch. 977 (S.B. 1091), and further amended, effective September 1, 2025, by Act of 2025, 89th Leg., R.S. (S.B. 2001).
13. Plaintiff's vehicle, license plate DV22B78, is registered under Tex. Transp. Code § 504.202 as a Texas Disabled Veteran specialty plate. Section 504.202(e) requires that plates issued under that section display the letters “DV,” consistent with Plaintiff's plate. Under § 372.053(a-1), NTTA's existing discount program was therefore required to include free or discounted passage for Plaintiff's vehicle (Exs. 7, 9, 12).

14. NTTA has not included Plaintiff's vehicle, or disabled veteran plates generally, in its discount program. NTTA's own published policy states that free passage is limited to Legion of Valor recipients and that no broader veterans' discount, including for disabled veterans, has been implemented, citing the absence of appropriated state funds. That justification does not appear in § 372.053(a-1); the appropriation provision in § 372.053(b) is a separate, permissive provision ("the legislature may appropriate funds…") and does not condition the mandatory duty in (a-1).
15. Notwithstanding the mandatory duty described above, and notwithstanding Plaintiff's formal written dispute of the underlying balance, NTTA issued a "Notice of Vehicle Ban Order and Intent to Impound" dated April 27, 2026, designating Plaintiff's other vehicle plate (WRZ1957) a "Habitual Violator" under Tex. Transp. Code § 372.106(a). The Order states that a first violation carries a $500 fine and that NTTA may impound the vehicle upon a second or subsequent violation (Ex. 8).
16. Between March and August 2026, TSI sent Plaintiff five separate collection notices regarding NTTA account 2032140827, each referencing a different NTTA invoice number and a different TSI-assigned account number, and each restarting a fresh 30-day dispute-and-validation period under 15 U.S.C. § 1692g(a): March 17, 2026 (invoice 1282692143, $134.80, TSI account 123310719); May 18, 2026 (invoice 1284847293, $76.26, TSI account 161296516); June 17, 2026 (invoice 1285820894, $76.14, TSI account 164978837); July 18, 2026 (invoice 1286910144, $56.10, TSI account 168830303); and August 17, 2026 (invoice 1288033213, $77.20, TSI account 175164433). All five concern the same underlying NTTA account, vehicle, and creditor relationship (Exs. 18–21, 23).
17. For purposes of Plaintiff's refusal to pay, these five notices concern a single debt, the underlying NTTA account obligation on Plaintiff's vehicle, not five independent debts. TSI's practice of assigning a new invoice number and account number to each monthly notice does not divide one continuing collection relationship into separate debts for purposes of 15 U.S.C. § 1692c(c).
18. On July 18, 2026, in response to the fourth of these notices, Plaintiff replied in writing the same day, at 10:37 a.m.: "I refuse to pay this debt." Under 15 U.S.C. § 1692c(c), a consumer's written statement that he refuses to pay a debt requires the debt collector to

cease further communication with the consumer regarding that debt, subject only to narrow exceptions (advising that collection is being terminated, or notifying the consumer of a specific remedy the collector intends to invoke) (Exs. 21, 22).

19. On August 17, 2026, notwithstanding Plaintiff's written refusal, TSI sent Plaintiff a fifth collection email regarding the same NTTA account, invoice 1288033213, TSI account number 175164433, seeking $77.20. Of that invoice, $16.20 reflects tolls on NTTA-owned facilities (Dallas North Tollway, President George Bush Turnpike); the remaining $26.00 reflects tolls on North Tarrant Express ("NTE") managed lanes, a facility operated by a private concessionaire that is excluded from the veteran discount programs of every toll authority in the state, including TxDOT's, and is not addressed by the NTE portion of this count. The NTTA/NTE breakdown has not been separately verified for the other four invoices listed above (Exs. 9, 23).

**B. Penn Credit (Plate WRZ1957)**

20. On December 11, 2025, Plaintiff received an initial collection notice from Penn Credit regarding NTTA account 2031375867 (license plate WRZ1957), Penn Credit reference number G0777711, alleging a balance of $90.37. On December 28, 2025, Plaintiff sent Penn Credit a formal written dispute via USPS Certified Mail, Return Receipt Requested, disputing the debt in its entirety under Tex. Fin. Code § 392.202 and demanding: (a) photographic proof of the alleged toll usage; (b) proof of Penn Credit's authority to collect on NTTA's behalf; (c) an itemization separating the original toll amounts from any added fees; and (d) proof of Penn Credit's surety bond required by Tex. Fin. Code § 392.101. Plaintiff's letter also demanded, under Tex. Fin. Code § 392.302(4), that Penn Credit cease all telephone communication and correspond only in writing (Ex. 15).
21. On January 6, 2026, Penn Credit responded in writing acknowledging receipt of Plaintiff's dispute, but provided none of the four items Plaintiff requested. Penn Credit's response instead directed Plaintiff to contact NTTA directly and to view invoices on NTTA's website (Ex. 14).
22. Penn Credit never provided the requested validation, including proof of its § 392.101 surety bond, at any point thereafter. By February 9, 2026, NTTA's own records reflected a balance of $822.96 on the account, up from the $90.37 balance in Penn Credit's original

notice, a result of NTTA's ongoing toll and fee accrual rather than any discrete Penn Credit action. Penn Credit continued pursuing collection of the increased balance without ever providing the validation Plaintiff had requested (Ex. 3).

23. Plaintiff's December 28, 2025 letter to Penn Credit stated: “I demand that you CEASE AND DESIST all telephone communication. All future communication must be in writing and sent to the address listed at the top of this letter.” This demand was unconditional and was not limited to phone calls; it required all future communication, of any kind, to be in writing to a specified address (Ex. 16).
24. Notwithstanding that demand, Penn Credit sent Plaintiff six automated text messages from short code 59304 between May 21, 2026 and June 17, 2026 (May 21, May 26, June 1, June 6, June 12, and June 17), each identifying Penn Credit as “a debt collector,” referencing NTTA, and directing Plaintiff to a payment portal using reference number G0777711001, matching Penn Credit's account reference G0777711. None of the six messages were written correspondence sent to the address specified in Plaintiff's December 28, 2025 letter (Ex. 17).

**C. PBFCM (Unrelated TxDOT/HCTRA Account)**

25. PBFCM's collection account (6293711264, $157.42) concerns tolls incurred between September 2023 and July 2024 on a different vehicle, license plate TJL4033, VIN 7SAYGDEE0PA075187, then registered to a former address in Kemah, Texas, and is unrelated to the NTTA account and vehicle described above. Plaintiff does not assert that the underlying tolls on this account are invalid; the claims below address PBFCM's collection conduct only.
26. On March 26, 2026, PBFCM sent Plaintiff a collection notice on behalf of TxDOT for $157.42, directing payment through the Harris County Toll Road Authority (“HCTRA”) website. Since November 9, 2024, HCTRA has administered billing for TxDOT-operated toll roads under an interlocal agreement with TxDOT. The same day, Plaintiff responded to PBFCM in writing, disputing the debt in its entirety and requesting validation: proof of the underlying tolls, proof of ownership at the time the tolls were incurred, an itemization of the balance, and proof of PBFCM's authority to collect. Plaintiff's letter requested that PBFCM cease collection activity until the debt was validated (Exs. 24, 25).

27. On April 29, 2026, and again on June 1, 2026, PBFCM sent Plaintiff collection emails demanding payment of the same $157.42 balance, each substantively identical to the March 26, 2026 notice. Neither email acknowledged Plaintiff's dispute or provided any of the requested validation. PBFCM continued demanding payment of the disputed balance without ever having provided the validation Plaintiff requested (Exs. 26, 27).
28. PBFCM's collection communications regarding this account (6293711264) date back to at least January 2024. From January through November 2024, PBFCM's notices identified the creditor as "Blueridge Transportation Group, LLC," with the stated balance increasing over that period from $23.96 to $124.26. Beginning February 7, 2025, PBFCM's notices on the same account number identified the creditor as "Texas Department of Transportation" instead, with no explanation given for the change, and the balance has remained fixed at $157.42 across at least fourteen consecutive monthly notices from February 2025 through June 2026, including the March 26, April 29, and June 1, 2026 notices described above.

**D. Pattern Across Collectors**

29. NTTA has referred different portions of Plaintiff's toll history on two separate accounts, WRZ1957 (account 2031375867, referred to Penn Credit) and DV22B78 (account 2032140827, referred to TSI), to separate third-party collectors simultaneously, causing consumer confusion and compounding the burden on Plaintiff of tracking and disputing overlapping obligations.

## <u>V. CAUSES OF ACTION</u>

**COUNT 1: VIOLATIONS OF THE TDCA (Tex. Fin. Code §§ 392.202, 392.304)**

30. Defendants Penn Credit, PBFCM, and TSI violated the TDCA by failing to cease collection activities following a written dispute and, as to TSI specifically, attempting to collect tolls and fees on a legally exempt Disabled Veteran vehicle.
31. Defendant PBFCM specifically violated Tex. Fin. Code § 392.202 by continuing collection efforts, including the April 29, 2026 and June 1, 2026 emails, after Plaintiff notified PBFCM in writing on March 26, 2026 that he disputed the accuracy of the $157.42 balance, without completing an investigation or sending the written statement

required by § 392.202(b). A violation of § 392.202 entitles Plaintiff to not less than $100 per violation under Tex. Fin. Code § 392.403(e).

32. Defendant Penn Credit specifically violated Tex. Fin. Code § 392.202 by continuing collection efforts, and allowing the disputed balance to escalate, after Plaintiff notified Penn Credit in writing on December 28, 2025 that he disputed the accuracy of the $90.37 balance, without completing an investigation, without sending the written statement required by § 392.202(b), and without providing the surety bond verification required by § 392.101.
33. Defendant Penn Credit further violated Tex. Fin. Code § 392.302(4) by causing Plaintiff's phone to receive six automated text messages between May 21, 2026 and June 17, 2026, repeatedly and continuously, after Plaintiff's December 28, 2025 written demand that Penn Credit cease all telephone communication.

**COUNT 2: ULTRA VIRES — DECLARATORY AND INJUNCTIVE RELIEF AGAINST DEFENDANT HOFMANN, IN HIS OFFICIAL CAPACITY**

34. Governmental immunity does not bar suit against a government official acting in an official capacity for prospective declaratory or injunctive relief where the official's conduct exceeds the government's statutory authority, including where the official has failed to perform a purely ministerial act. City of El Paso v. Heinrich, 284 S.W.3d 366, 372 (Tex. 2009); Sw. Bell Tel., L.P. v. Emmett, 459 S.W.3d 578, 587–88 (Tex. 2015). This claim does not assert a private right of action under Chapter 372 of the Transportation Code; the cause of action is the ultra vires doctrine itself, and § 372.053(a-1) supplies the statutory duty Defendant Hofmann's conduct fails to perform.
35. Section 372.053(a-1) leaves NTTA no discretion over whether to include vehicles registered under § 504.202 in its existing discount program, only limited discretion over the degree of the benefit. Defendant Hofmann's continued exclusion of Plaintiff's vehicle altogether, notwithstanding that mandatory duty, is a failure to perform a purely ministerial act and is ultra vires.
36. Plaintiff seeks a declaration that Defendant Hofmann's conduct exceeds NTTA's statutory authority, and injunctive relief ordering Defendant Hofmann to include Plaintiff's vehicle in NTTA's existing veteran discount program as required by § 372.053(a-1) and to cease

enforcement predicated on tolls that should have been discounted or waived under that program. Plaintiff does not seek money damages against Defendant Hofmann in this count.

**COUNT 3: VIOLATIONS OF THE FDCPA (15 U.S.C. §§ 1692c, 1692d, 1692e, 1692g)**

37. Defendants Penn Credit, PBFCM, and TSI violated the FDCPA through continued communication after a written dispute, failure to provide proper debt validation, and, as to TSI, using false or misleading representations regarding the exempt status of the debt.
38. Defendant TSI further violated 15 U.S.C. § 1692c(c) by emailing Plaintiff on August 17, 2026 regarding Plaintiff's NTTA account, after Plaintiff notified TSI in writing on July 18, 2026 that he refused to pay the debt, an express statutory trigger under § 1692c(c)(1).
39. Defendant PBFCM specifically violated 15 U.S.C. § 1692g(b) by continuing collection activity, including the April 29, 2026 and June 1, 2026 emails demanding payment of the $157.42 balance, after Plaintiff disputed the debt in writing on March 26, 2026, without first obtaining and mailing Plaintiff verification of the debt as that section requires.
40. Defendant Penn Credit specifically violated 15 U.S.C. § 1692g(b) by continuing collection activity, including allowing the disputed balance to escalate to $822.96, after Plaintiff disputed the debt in writing on December 28, 2025, without first obtaining and mailing Plaintiff verification of the debt as that section requires.
41. Defendant Penn Credit further violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff by text message on six occasions between May 21, 2026 and June 17, 2026, after Plaintiff's December 28, 2025 written demand that all future communication be in writing and directed to a specified address, an unconditional cease-communication demand that Penn Credit did not honor.

## <u>VI. DAMAGES</u>

42. As a direct and proximate result of the conduct of Defendants Penn Credit, PBFCM, and TSI described above, Plaintiff suffered mental anguish and emotional distress, including anxiety, sleep disruption, and physical stress symptoms, over a sustained, overlapping collection period spanning approximately nine months. This distress arose from Penn Credit's continued pursuit of an unvalidated, escalating balance and its unauthorized text

messages after Plaintiff's written cease demand; TSI's repeated re-placement of the same account under new invoice and account numbers and its continued communication after Plaintiff's express written refusal to pay; and PBFCM's repeated, non-responsive form communications following Plaintiff's written dispute across a separate account. Each Defendant's conduct independently caused Plaintiff harm, and the cumulative, overlapping nature of managing three simultaneous, unresolved collection matters compounded that harm.

43. Plaintiff seeks the following damages: (a) Actual damages for mental anguish and emotional distress, in an amount to be determined at trial but not less than $10,000, for the conduct of Defendants Penn Credit, PBFCM, and TSI described above; (b) Statutory damages under 15 U.S.C. § 1692k(a)(2)(A), not to exceed $1,000 as to each of Defendants Penn Credit, PBFCM, and TSI; (c) Statutory damages under Tex. Fin. Code § 392.403(e), not less than $100 per violation, as to Defendants Penn Credit's and PBFCM's violations of § 392.202, with the number of separate violations to be determined at trial; (d) Post-judgment interest and costs of court.

## VII. PRAYER

Plaintiff DeJon Paris respectfully requests that Defendants be cited to appear and answer herein; that the Court grant a jury trial if requested; that the Court declare Defendant Hofmann's conduct described in Count 2 ultra vires and enter injunctive relief as requested therein; and that upon final hearing, Plaintiff be awarded actual damages, statutory damages, post-judgment interest, and all costs of court.

Respectfully submitted, Dated: September 1, 2026

/s/ DeJon Paris

DeJon Paris, Pro Se

1710 Keller Parkway #9602

Keller, TX 76248

(813) 605-9789

dejon.paris@gmail.com